IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 02-CV-1971-CMA-BNB

WILLIAM R. BERG,

Petitioner,

v.

PHIL FOSTER, Warden ICIO and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO

Respondents.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE AND ORDER

---

This matter arises on the **Petitioner's Combined Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and Request for Evidentiary Hearing** [Doc. #100, filed 5/27/2008] (the "Amended Application") by William Berg (the "petitioner"). I respectfully RECOMMEND that the Amended Application be DENIED.

## I. BACKGROUND

On March 4, 1996, the petitioner was charged with Aggravated Robbery, C.R.S. § 18-4-302; Second Degree Kidnapping, C.R.S. § 18-3-302; and First Degree Assault, C.R.S. 18-3-202. *Amended Answer to Order to Show Cause* [Doc. #42, filed June 23, 2003] (the "Second Answer")[1], Appendix D, p. 3. On July 8, 1996, the petitioner pled guilty in Case No. 96-CR-385 to an amended charge of Aggravated Robbery, C.R.S. 18-4-302(1)(a). Id.; *Record*, Vol. 4, p. 2.

---

[1]The defendants filed their initial answer on January 28, 2003 [Doc. #16]. Subsequently, they were granted leave to file the Second Answer. They also filed

On October 2, 1996, the petitioner was sentenced to the Colorado Department of Corrections for a term of 32 years. *Second Answer*, Appendix D, p. 3.

The petitioner appealed his sentence on the grounds that (1) the trial court abused its discretion in denying his motion to continue the sentencing hearing, and (2) the trial court abused its discretion when it sentenced him to the maximum aggravated sentence of 32 years. Id. at Appendix Y. The Colorado Court of Appeals affirmed the trial court on February 5, 1998. Id. at Appendix W. The Colorado Supreme Court denied certiorari review on September 30, 1998. Id. at Appendix T.

The petitioner filed a motion for sentence reconsideration pursuant to Colo. R. Crim. P. 35(b) on January 25, 1999. Id. at Appendix R. The district court denied the motion on May 24, 1999. Id. at Appendix Q. The petitioner did not appeal that denial.

On March 3, 2000, the petitioner filed a *pro se* motion for post-conviction relief pursuant to Colo. R. Crim. P. 35(c) and a motion for appointment of counsel. Id. at Appendix P. Counsel was appointed for the petitioner, but was permitted to withdraw on July 20, 2000. Id. at Appendix J.

The petitioner filed a renewed *pro se* motion for post-conviction relief pursuant to Colo. R. Crim. P. 35(a) and (c) in October 2000. Id. The petitioner alleged, in part, that the trial court violated his due process and equal protection rights by accepting his guilty plea because he had a mental illness and was heavily medicated during the plea hearing and was, therefore, prevented from entering an intelligent, voluntary, and knowing plea. Id. The trial court found that this claim had been "substantially raised and determined" during the petitioner's direct appeal and denied the motion without a hearing on November 30, 2000. Id. at Appendix I. The Colorado Court of Appeals affirmed the trial court's denial on May 9, 2002. Id. at Appendix E. The

appellate court found that the petitioner was not entitled to relief because the petitioner's allegations were conclusory and the record of the plea hearing demonstrated that he was lucid and understood the proceedings. Id. at pp. 1-2. The Colorado Supreme Court denied certiorari review on September 16, 2002. Id. at Appendix B.

The petitioner filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Doc. #3] (the "Initial Application") in this Court on October 16, 2002. On April 21, 2003, I granted the petitioner's motion to expand the record [Doc. #32] to include a psychiatric evaluation of the petitioner written by Dr. Robert Wolfsohn on September 26, 1992 [Doc. #21, Ex. 5(a)]. The report had been included in the petitioner's presentence report in the state sentencing court. *Second Answer*, p. 20.

On February 2, 2005, the Initial Application was denied [Doc. #65]. On March 11, 2005, the petitioner appealed the denial of his Initial Application to the Tenth Circuit Court of Appeals [Doc. #69]. On August 28, 2007, the circuit court reversed the dismissal of Claims One and Two as unexhausted and found that the petitioner had exhausted those claims [Doc. #76]. The case was remanded for further proceedings on Claims One and Two.

On November 16, 2007, I granted the petitioner's motion for appointment of counsel and granted him leave to file an amended petition to address Claims One and Two [Doc. #81]. The petitioner filed his Amended Application on May 27, 2008. Claim One alleges that the petitioner's guilty plea was involuntary in violation of the Fourteenth Amendment because he was suffering from post-traumatic stress disorder and psychosis during the plea hearing. Claim Two alleges that the petitioner's plea was involuntary in violation of the Fourteenth Amendment because he was under the influence of extremely high doses of psychotropic medications when he entered his plea.

The respondents filed their Answer to Amended Application for Writ of Habeas Corpus and Request for Evidentiary Hearing [Doc. # 101] (the "Third Answer") on June 11, 2008.

## II.  MOTION FOR EVIDENTIARY HEARING

The petitioner requests an evidentiary hearing on his claims.  An evidentiary hearing may be held only if certain specific requirements are met:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A)  the claim relies on--
>
> > (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;  or
> >
> > (ii)  a factual predicate that could not have been previously discovered through the exercise of due diligence;  and
>
> (B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

"Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  Michael Williams v. Taylor, 529 U.S. 420, 432 (2000).  "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."  Id. at 437.  However, "[m]ere requests for evidentiary hearings will not suffice; the petitioner must be diligent in pursuing the

factual development of his claim." <u>Cannon v. Mullen</u>, 383 F.3d 1152, 1176 (10th Cir. 2004)

(quoting <u>Dowthitt v. Johnson</u>, 230 F.3d 733, 758 (5th Cir.2000)).

> Comity dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.  For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error.  If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met.  Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.  Yet comity is not served by saying a prisoner "has failed to develop the factual basis of a claim" where he was unable to develop his claim in state court despite diligent effort. In that circumstance, an evidentiary hearing is not barred by § 2254(e)(2).

<u>Michael Williams</u>, 529 U.S. at 437 (citations omitted).

"If the prisoner did not fail to develop the factual basis of his claim in State court,

§ 2254(e)(2) is not applicable and a federal habeas court should proceed to analyze whether an

evidentiary hearing is appropriate or required under pre-AEDPA standards." <u>Cannon</u>, 383 F.3d

at 1152 (internal quotations and citations omitted).  "Under the pre-AEDPA standard, a habeas

petitioner was entitled to an evidentiary hearing in federal court if (1) the facts were not

adequately developed in the state court, so long as that failure was not attributable to the

petitioner, and (2) his allegations, if true and not contravened by the existing factual record,

would entitle him to habeas relief." <u>Id.</u> at 1175 (internal quotations and citations omitted).

The petitioner asserts that he was diligent in developing the factual bases for Claims One

and Two because he repeatedly asked the Colorado courts to conduct an evidentiary hearing on

his claims and he "repeatedly, though unsuccessfully, requested transcripts and other

documentation from the court and from his appointed post-conviction counsel (who declined to assist him and later withdrew)." *Amended Application*, p. 12. Therefore, the petitioner argues, his request for an evidentiary hearing is not governed by 28 U.S.C. § 2254, but is instead governed by the case law decided prior to the enactment of section 2254.

In support of his assertion that he diligently pursued the factual bases of Claims One and Two, the petitioner cites (1) Appendixes K through M of the Second Answer, and (2) Document No. 17, filed in this case on February 10, 2003. Id. at pp. 3-4.

In Document No. 17, the petitioner requested that this Court provide to him the transcripts and records from the state courts.[2] He stated that he had attempted to obtain the transcripts and records from the state courts for over 5 years, but without success. He attached to Document No. 17 a motion he filed in the state court which purports to list his attempts to obtain the transcripts and records from the state courts and from his counsel.

Appendix K to the Second Answer summarily states that the petitioner filed a motion to compel documents in the state court on July 18, 2000.

Appendix L is a Motion to Withdraw filed by the state Office of the Public Defender. The state Public Defender stated in part:

> 1. The Office of the Public Defender was appointed to look into Mr. Berg's concerns regarding post-conviction relief.
>
> 2. Ms. Ekman, the attorney assigned to the case has examined each and every of Mr. Berg's concerns, and does not find that he is entitled to the post-conviction relief he desires.
>
> 3. Mr. Berg has numerous claims that he feels warrants a 35(c) motion. These are as follows:

---

[2]I note that the petitioner's requests for records in this Court are only relevant to the extent they shed light on his attempts to develop the factual basis of his claims in state court.

a.  Mr. Berg states that he is mentally ill, and that the questioning by the Judge was not sufficient to determine whether his plea was intelligent, voluntary, and knowing.

The transcripts were ordered from the sentencing, and from the original sentencing that was postponed because Mr. Berg was not on his medication, and needed to be.  The second sentencing Mr. Berg was on his medication, was questioned by the Judge, and the Judge accepted his plea.[3]

b.  Mr. Berg feels that because his psychiatric case worker was not allowed to speak on behalf of his case, there is a 35(c) issue.

After examining the transcripts, it appears that the caseworker was not Mr. Berg's caseworker, he was instead a caseworker from the program Mr. Berg's attorney was trying to get him into for sentencing. It appears from the transcripts that Mr. Berg's attorney requested that the caseworker be allowed to speak about a program, but was not allowed because the Judge was already familiar with the program.

Id. at ¶¶ 1-3(b).  Appendix L does not reflect that the petitioner requested any documents.

Appendix M is a letter to Ms. Ekman from the petitioner.  In this letter, he requested that Ms. Ekman withdraw from his case.  Appendix M does not reflect that the petitioner requested any documents.

The evidence cited by the petitioner does not establish that the petitioner was diligent in developing the factual bases for Claims One and Two.  Nevertheless, I have conducted an

---

[3]The state record shows that the petitioner's plea was accepted at the plea hearing on July 8, 1996.  *Record*, Vol. 4, pp. 10-11.  The judge did not take a plea at the second sentencing hearing; he sentenced the petitioner.  *Record*, Vol. 6, pp. 8-9.

independent review of the state court record for evidence of the petitioner's diligence in developing Claims One and Two in the state courts.

The record shows that the petitioner filed a motion to compel on July 18, 2000, wherein he requested that Ms. Ekman provide him with "all documentation" pertaining to his criminal action "which is in her possession" including (1) all correspondence between the petitioner and the Public Defender; (2) all transcripts of prior proceedings which were in her possession; (3) all information, briefs, supporting evidence, and documentation that he provided to the Public Defender; and (4) "all other filings, notes, briefs, memos" which concerned the petitioner. *Record*, Vol. 1, pp. 80-83. The petitioner stated that the requested materials were important to "file a meaningful and a non-frivolous litigation of Post-Conviction proceedings under C.R.Crim.P. 35(c)." Id. at p. 81.

Ms. Ekman filed a response to the motion. Id. at p. 84. She stated that she would send to the petitioner all of the documents that were in her possession, and she objected to the motion insofar as it requested documents not within her possession. Id. The state court granted Ms. Ekman's motion to withdraw. Id. at p. 85.

The petitioner filed a "Motion to Enforce Order" on September 5, 2000. He stated that he did not receive from Ms. Ekman transcripts of the (1) preliminary hearing on March 4, 1996; (2) motions hearing on May 17, 1996; (3) plea hearing on July 8, 1996; and (4) sentencing hearing on September 24 1996. Id. at p. 87. He requested that Ms. Ekman be compelled to provide him with those transcripts because they were pertinent to his ability to "file a [sic] adequate and meaningful litigation in [sic] his behalf." Id. Attached to the motion was a letter addressed to the petitioner from Ms. Ekman dated August 2, 2000, which stated that she

enclosed her entire file and that she was not able to send him any other information because she no longer represented him. Id. at p. 92.

Also attached to the "Motion to Enforce Order" was a letter to Ms. Ekman from the petitioner dated August 9, 2000, where he acknowledged receipt of the transcripts from the October 3, 1996, sentencing hearing and requested that she send him transcripts from (1) the arraignment on March 4, 1006; (2) "Preliminary/motions 5/17/96"; (3) the plea hearing on July 8, 1996; and (4) the sentencing hearing on September 24, 1996. Id. at p. 93. Finally, the petitioner attached to his "Motion to Enforce Order" a letter from Ms. Ekman to the petitioner dated August 22, 2000, which stated that she is not able to send the requested transcripts; she sent him everything she had in her possession; and she cannot order additional transcripts for him because she is no longer his attorney. Id. at p. 94.

The petitioner argues that he diligently attempted to develop the factual bases of Claims One and Two by requesting the "transcripts and other documentation," *Amended Application*, p. 12. The record reflects, however, that the petitioner's attempts were limited to requests to Ms. Ekman; sought from Ms. Ekman transcripts that she did not possess; and justified the requests by a vague reference to filing a meaningful post-conviction motion. There is no evidence in the record that the petitioner attempted to obtain copies of the transcripts from the Court, the counsel appointed to represent him for his plea and sentencing, or anyone else, or that the transcripts were requested in support of Claims One and Two. Moreover, he does not describe with any specificity the contents of the "transcripts and other documentation" or explain how those "transcripts and other documentation" would have been relevant to the development

of the factual bases of Claims One and Two. In short, the petitioner has failed to show that he diligently pursued the factual development of Claims One and Two.[4]

In addition, the state courts did not prevent the petitioner from developing the factual bases for his claims by denying his requests for an evidentiary hearing. Diligence requires a petitioner to "at a minimum, seek an evidentiary hearing in state court *in the manner prescribed by state law*." Michael Williams, 529 U.S. at 437. Under Colo. R. Crim. P. 35(c), there is no requirement that a hearing be held, and a post-conviction court may deny a claim without a hearing when the motion, files, and record demonstrate that the defendant is not entitled to relief. Colo. R. Crim. P. 35(c)(3) (2000). As discussed below, the petitioner's post-conviction motion and the record demonstrated that the petitioner was not entitled to post-conviction relief.

The petitioner has not shown that he was diligent in his attempts to develop the factual bases of Claims One and Two in the state courts. Therefore, he has "failed" within the meaning of 28 U.S.C. 2254(e)(2) to develop the factual basis of Claims One and Two in the state courts, and his request for an evidentiary hearing cannot be granted unless he shows:

> (A)  the claim[s] rel[y] on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B)  the facts underlying the claim[s] would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

---

[4]To the contrary, it appears that the petitioner is still trying to develop the factual bases for Claims One and Two. *Amended Application*, p. 18 (seeking permission to conduct additional discovery).

Because the petitioner relies in the Amended Application on pre-AEDPA standards for an evidentiary hearing, he does not discuss the standard required under 28 U.S.C. § 2254(e)(2) for an evidentiary hearing. Accordingly, he has failed to make the requisite showing, and his request for an evidentiary hearing is DENIED.

### III. CLAIMS ONE AND TWO

Claim One alleges that the trial court accepted the petitioner's guilty plea in violation of his due process and equal protection rights because the petitioner was suffering from a mental disorder at the plea hearing which hampered his ability to enter a competent plea. Claim Two alleges that the petitioner's guilty plea was accepted in violation of his due process and equal protection rights because the petitioner was on a large dose of psychotropic medication at the time.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that an application for a writ of habeas corpus may be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Factual determinations made by the state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court clarified this standard in Terry Williams v. Taylor, 529 U.S. 362 (2000):

> Under the "contrary to" clause, a federal habeas court may grant
> the writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court

decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 412-13. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.

"On review, a federal court may set aside a state court guilty plea only for failure to satisfy due process." Cunningham v. Diesslin, 92 F.3d 1054, 1060 (10th Cir. 1996). The Fourteenth Amendment's Due Process Clause permits a guilty plea only if it is knowing and voluntary. Boykin v. Alabama, 395 U.S. 238, 242 (1969). The plea must represent a deliberate, intelligent choice, Parke v. Raley, 506 U.S. 20, 28 (1992), and the defendant must have "a full understanding of what the plea connotes and of its consequence." Boykin, 395 U.S. at 244. "The defendant need not understand every collateral consequence of the plea, but need only understand its direct consequences." United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002).

Voluntariness of the plea involves a question of law, but the ultimate finding regarding voluntariness rests on factual findings. Parke, 506 U.S. at 35. Findings of fact made by the state court regarding the voluntariness of the plea carry a presumption of correctness. Cunningham, 92 F.3d at 1060. To rebut this presumption, the petitioner must present clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The petitioner entered his guilty plea at the plea hearing held on July 8, 1996. *Record*, Vol 4. The following colloquy took place at that hearing:

COURT:   Mr. Berg, I do have to advise you of some matters.  If you have any questions about what I'm advising you, please ask your attorney.  How old are you, Mr. Berg?

DEFENDANT:   Thirty-six, Your Honor.

COURT:   How far have you gone in school?

DEFENDANT:   Two years of college.

COURT:   Have you ever been treated for any mental illness or to your knowledge do you now suffer from any emotional or mental disability?

DEFENDANT:   Yes, Your Honor.  I've been treated for about eight years on a post-traumatic stress disorder from the Service.

COURT:   Are you taking medications now, at the present time?

DEFENDANT:   Yes, Your Honor.

COURT:   Have you had medication this morning or within the last 24 hours?

DEFENDANT:   Last night at 8:30.

COURT:   Is there anything about the effect of that medication that would give you any problem understanding what's going on here this morning?

DEFENDANT:   I don't believe so.

COURT:   Are you under the influence of any drug, medication or alcohol that would affect your understanding of what we're doing here this morning?

DEFENDANT:   I don't believe so, no.

COURT:   You are represented by Mr. Holmes who stands by your side.  Have you had enough time to discuss this case with your lawyer?

DEFENDANT:   Yes, I have.

COURT:   Are you satisfied with his services?

DEFENDANT:   Yes, I am.

COURT:   It's my duty to advise you that a plea of guilty admits the charge, amended charge, of aggravated robbery which has been filed as a non-mandatory sentencing charge.  A plea of not guilty denies that charge.  Has Mr. Holmes explained that to you, too?

DEFENDANT:   Yes, he has, Your Honor.

* * *

COURT:   Mr. Berg, do you understand the advisal the district attorney just gave you regarding the elements of the crime?

DEFENDANT:   Yes.

MR. HOLMES:   Mr. Berg had a question for me, Judge.  I'm sorry to interrupt you but he had a question he wanted to ask me about something Mr. Poland said.  Would that be all right?

COURT:   Sure.  Go ahead.

(Defendant conferring with his counsel.)

MR. HOLMES:   Thank you, Judge.  I'm sorry.

COURT:   All right.  Mr. Berg, do you understand that each of those elements would have to be proven beyond a reasonable doubt to the satisfaction of a jury or a Judge before you could be convicted of the offense of aggravated robbery?

DEFENDANT:   Yes, sir.

COURT:   You understand the possible sentence for a Class 3 felony is a prison sentence of from 2 to 32 years.  If the Court sentences you to prison, there's a five year mandatory period of parole.  In addition, the Court could fine you from $3,000 to $750,000.

DEFENDANT:   Yes, Your Honor.

COURT: Do you understand the nature of the charge against you as explained by the district attorney and the effect of your plea of guilty?

DEFENDANT: Yes, sir.

COURT: Have you been promised leniency, favors or special consideration for your guilty plea that I haven't been told about in open court this morning?

DEFENDANT : No, sir.

COURT: Do you understand I won't be bound by any promises anyone may have made to you regarding what sentence I might impose or whether I'd grant or deny probation?

DEFENDANT: Yes, sir.

COURT: Do you understand when you enter a plea of guilty, you give up some constitutional rights, including your right to trial by jury, your right to remain silent, your right to cross-examine witnesses against you, your right to present evidence in your own defense, your right to subpoena and compel the attendance of witnesses for your trial and your right to appeal in the event you might be convicted at trial?

DEFENDANT: Yes, sir.

COURT: Considering everything I've advised you, Mr. Berg, how do you wish to plead to the aggravated robbery charge, Class 3 felony, non-mandatory sentence, guilty or not guilty?

DEFENDANT: Guilty, Your Honor.

COURT: Are you entering that plea freely and voluntarily?

DEFENDANT: Yes.

COURT: Anyone forcing you or putting any pressure on you to do that?

DEFENDANT: No.

COURT: I'll find that Mr. Berg has voluntarily and intelligently waived his right to trial by jury, his right to remain silent and his right to cross-examine witnesses against him.

I'll find that he understands the nature of the charge, the elements of the offense and the consequences of pleading guilty. I'll find that he understands the possible penalties and understands the Court will not be bound by promises of penalty or probation.

I'll find the plea to be voluntarily given, without undue influence or coercion. I'll find that there is a factual basis for the plea set forth in the affidavit and application for arrest warrant signed by Detective Peterson on November 3, 1995, before Judge Romeo. I'll accept the plea of guilty.

Id. at pp. 5-11.

The sentencing hearing was set for September 24, 1996. Id. at p. 11. At the sentencing hearing, petitioner's counsel, Mr. Holmes, requested a continuance because the petitioner had not received his medication for two days. *Record*, Vol. 5, p. 2. Mr. Holmes stated:

The reason why, Judge, is that as the Court may have noticed from the review of the report in this case, Mr. Berg suffers from some mental difficulties for which he is on psychotropic medication. He has not received those medications for the last couple of days.

My understanding is the reason for that is that because of the facility he's being kept in, the prescriptions are prescribed in Golden and they were mislabeled. They were labeled with his name as opposed to the facility's name so they were not sent out. So he has not had his medication for a couple of days. As a result, he's beginning to have some hallucination problems as well as his thought processes going in and out.

I spent a little time talking with him this morning, Your Honor, but I think it would probably be wise to set the sentencing hearing over.

Id. at pp. 2-3.

The sentencing was reset for October 2, 1996.  Id. at p. 3.  On that date, the petitioner appeared with Mr. Holmes.  *Record*, Vol. 6, p. 2.  Mr. Holmes requested another continuance of the sentencing so that Mr. Berg could undergo a psychiatric evaluation in order to be eligible for placement into a program available through the state hospital.  Id. at pp. 2-3.  The court denied Mr. Holmes' request and sentenced the petitioner to the maximum sentence of 32 years.  Id. at p. 9.

The petitioner filed his post-conviction motion in October 2000.  *Second Answer*, Appendix J.  He asserted two arguments pertaining to his guilty plea:[5]

<u>ARGUEMENT</u>

> The trial court accepted the defendants guilty plea in violation of his constitutional rights to due process and equal protection.  The defendant suffers from a debilitating mental disorder that is well documented in the record and in the pre-sentence report.  These conditions prevented the defendant from making an intelligent decision as to his plea.  Therefore his plea was not voluntary nor an intelligently made decision and as such the plea must be quashed as it was unconstitutionally obtained.
>
> Mr. Berg's mental history is well documented and known to the court, on several occassions going back as far as 1980.  Mr. Berg through counsil moved the court for a psychiatric evaluation, but the motion was denied on June 6, 1996.
>
> The record before the court will show that the last evaluation was done in 1991, by the same court hearing the instant case at which time the states psychiatrist Dr. Wolfson, in his report indicated that the defendant suffered from Post-Traumatic Stress dissorder, Paranoid Scyzophrinic coupled with Auditory and Visual manifestations.  This was incured due to an injury from a gunshot wound to the chest while in the military.

---

[5]The arguments are copied as written, without notation of grammar or spelling errors.

The record will also reflect that the hearing of September 24, 1996 was post poned due to mental health problems the defendant was suffering from at the time.

The Trial Court's failure to conduct an in depth colloquey to assure that the defendants plea was knowingly, voluntarily, and intelligently made decision was insufficient to conclude that someone with the defendants mental history made the plea freely and intellgently.

"Moreover the trial court was aware of the defendants mental infirmities and should have made inquiries to show the defendant voluntarilly and knowingly entered his plea of guilty" Randolph v. People 488 P2d 203 at 204

## ARGUEMENT

The defendant was recieving a large dosage of pyschotropic tranquilizing medication at the time of his plea, which renders the plea defective as it was not voluntarilly or intelligently made, thus this plea was not obtained in accordance with the defendants constitutional rights and must be quashed as it is constitutionally infirm.

At the time of his plea the defendant was under a large dosage of tranqulizing medication and was not lucid at the time he entered his plea and as a result the plea must be vacated and set aside as it was niether intelligent or voluntary and accepted in violation of the defendants right to due process and equal protection.

As set forth in Vonpickrell v. People 431 P2d 1003 the Supreme Court specifically stated "If a defendant can show that he was under the influence of tranquilizing medication at the time he changed his plea from Not Guilty to Guilty to the event that the plea was not free and volitary act he shall be entitled to withdraw his plea" supra at 1006

*Second Answer*, Appendix J, pp. 4-6 (all-caps and bold omitted).

The trial court denied the petitioner's claims as follows:

Defendant raises several grounds for relief based in part on the severity of the sentence received and the Defendant's mental status as it relates to his ability to knowingly, intelligently and

18

voluntarily enter his plea.  The Court finds that these issues were substantially raised and determined in the Defendant's appeal to the Colorado Court of Appeal of *The People of the State of Colorado, v. William R. Berg, Jr.*, 96 CA 2061, (1998).

*Second Answer*, Appendix I.

The petitioner appealed the trial court's decision.  Id. at Appendix H.  Both the petitioner and the government advised the appellate court that the petitioner did not raise the voluntariness of his plea on direct appeal.  Id. at Appendix, H, pp. 4-5; Appendix G, pp. 6-8.  The appellate court reviewed the record and determined that the petitioner's allegations were conclusory; the record demonstrated that the petitioner was lucid and understood the plea proceedings; and because the petitioner was clearly not entitled to relief, the trial court did not err in refusing to conduct a hearing.  The appellate court stated the following:

> Defendant first contends the trial court erred in rejecting, without a hearing, his allegation that his guilty plea had not been entered knowingly and voluntarily.  We find no error.
>
> A trial court may summarily deny a defendant's Crim. P. 35(c) motion when the claims are bare and conclusory, Moore v. People, 174 Colo. 570, 485 P.2d 114 (1971), or when the record refutes or contradicts all of them.  People v. Blehm, 983 P.2d 779 (Colo. 1999).
>
> A Crim. P. 35(c) motion may be denied without a hearing if the motion, files, and record clearly establish that the defendant is not entitled to relief.  White v. Denver District court, 766 P.2d 632 (Colo. 1988).
>
> Here, defendant's motion alleged that, when he pled guilty, he was under a "large dosage of tranquilizing medication" and was "not lucid."
>
> At the [plea] hearing, the trial court questioned defendant extensively about his mental situation, inquiring whether he had been treated for mental illness or was suffering from an emotional or mental disability.  The court also attempted to ascertain whether he was under the influence of any medication for those conditions.

> Defendant told the court he had been treated for post-traumatic stress disorder for approximately eight years, that he was and had been taking medication for that condition, and that he had taken some of that medication the previous evening. Nevertheless, defendant said he "didn't believe" that the medication would give him any problems understanding the [plea] proceedings, and he denied being under the influence of any alcohol, drug, or mediation that would affect his understanding.
>
> Because defendant's allegations in his motion were conclusory at best, and because the record of the [plea] hearing demonstrates that defendant was lucid and understood the proceedings, the trial court's denial of his motion was correct. And, because the defendant was clearly not entitled to relief, the refusal to conduct a hearing was not error.

Id. at Appendix E, pp. 1-2.

In Claim One of the Application, the petitioner raises a competency claim based on substantive due process. The Tenth Circuit Court of Appeals has distinguished between competency claims based on substantive due process, as here, and those based on procedural due process:

> Competency claims may be based on violations of both procedural and substantive due process. A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent. The standards of proof for procedural and substantive competency claims differ. To make out a procedural competency claim, a defendant must raise a bona fide doubt regarding his competency to stand trial. This requires a demonstration that a reasonable judge should have doubted the defendant's competency. It does not require proof of actual incompetency. A substantive competency claim, on the other hand, requires the higher standard of proof of incompetency by a preponderance of the evidence.

Allen v. Mullin, 368 F.3d 1220, 1239 (10th Cir. 2004) (internal quotations and citations omitted) (applying the standard to entry of a guilty plea).

Here, the petitioner attempted to prove his incompetency to the state courts[6] by (1) referring the court to a psychiatric evaluation of the petitioner in 1991 by Dr. Wolfsohn which indicates that the petitioner suffers from post-traumatic stress disorder and paranoid schizophrenia; (2) stating that the court denied his motion for a psychiatric evaluation on June 6, 1996; and (3) referring the court to the sentencing hearing scheduled for September 24, 1996, but which was postponed due to the mental health problems he was suffering at the time. *Second Answer*, Appendix J, p. 4.

The record shows that on June 6, 1996, a month before the plea hearing, the petitioner moved in a different criminal action--Case No. 96-CR-495--for a psychiatric evaluation at the State's expense. Doc. #21, Ex. 5(c). He sought a psychiatric evaluation because it was a requirement for placement in a drug treatment program at the Colorado State Hospital. Id. The motion is based on the petitioner's "drug and alcohol abuse problem." Id. The motion does not address the petitioner's mental illness and does not establish that the plaintiff was incompetent at the time of the plea hearing. To the contrary, the record shows that the petitioner was in custody at the time of the plea hearing, *Record*, Vol. 4, p. 3, presumably without access to drugs and alcohol.

The petitioner also attempted to establish that he was incompetent at the plea hearing by referring to a hearing on September 24, 1996, which was postponed due to mental health problems the petitioner was suffering at that time. The record establishes, as discussed above, that the sentencing hearing in the underlying state case was postponed at counsel's request

---

[6]The petitioner did not argue the merits of his involuntary plea claims to the state appellate court. He argued only that the trial court erred in denying the claims as having been previously asserted and that the trial court erred in denying his post-conviction motion without a hearing. *Second Answer*, Ex. H.

because the petitioner had not received his psychotropic medication for two days and was beginning to have "some hallucination problems as well as his thought processes going in and out." *Record*, Vol. 5, pp. 2-3. This evidence does not establish that the petitioner was incompetent at the plea hearing more than two months earlier, on July 8, 1996, when the petitioner pled guilty. Indeed, the petitioner admitted at the plea hearing that he *had* taken his medication prior to the plea hearing and stated that the medication did not impair his ability to understand the proceeding. *Record*, Vol. 4, p. 6.

Finally, the petitioner relied upon Dr. Wolfsohn's report to prove his incompetency at the plea hearing. The report is dated September 26, 1992, and was prepared to assess whether the petitioner was appropriate for placement in a particular program upon release from jail. Document #21, Ex. 5(a). Although Dr. Wolfsohn diagnosed the petitioner with "post traumatic stress disorder with psychotic features" and "adjustment disorder with depressed mood," id. at p. 4, he also noted that at the time of examination the petitioner was oriented; had an appropriate affect; his speech was goal-directed and relevant; and "there was no evidence of hallucinations or delusions in the present." Id. at p. 2. In addition, Dr. Wolfsohn documented the following assessment of the petitioner:

> He was able to complete all test items, was very cooperative and appeared motivated during the evaluation.
>
> TEST RESULTS: . . . This indicates he is functioning in the average range of intellectual ability. Relative strengths for Mr. Berg include his fund of general information and short term memory and concentration skills. He understands how to respond in challenging social situations and his arithmetic and visual motor skills are average. Mr. Berg's judgment may be poor at times and his perceptual speed is below average.

Id. at pp. 2-3.

The report indicates that the petitioner is capable of appropriate comprehension regardless of his diagnosis. The report does not establish that the petitioner was incompetent to enter a plea almost four years later. "The presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to knowingly and voluntarily enter a plea as well as aid and assist in his own defense." Wolf v. United States, 430 F.2d 443, 445 (10th Cir. 1970). Rather, "[t]he test of mental competency at the time of trial or the entering of a plea in a criminal case is that the accused have 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him.'" Id. at 444 (quoting Dusky v. United States, 362 U.S. 402 (1960)).

In Claim Two of the Application, the petitioner contends that his plea was involuntary because he was under the influence of "extremely high doses of psychotropic medications." *Amended Application*, pp. 1-2. In his brief to the state court, he did not cite any evidence to support this claim. *Second Answer*, Appendix J, pp. 5-6. He provided only conclusory statements that he was not lucid at the time he entered his plea.

The record shows that the petitioner requested a continuance of the sentencing hearing because he had "some hallucination problems and his thought processes going in and out" when *not* taking his medication, *Record*, Vol. 5, pp. 2-3. When *on* his medications, however, the plaintiff did not believe he had any problem understanding the plea proceedings. *Record*, Vol. 4, p. 6. Thus, the record indicates that the petitioner's medications contributed to his ability to understand rather than detracting from it.

The appellate court found that the record demonstrated that the petitioner was lucid and understood the plea proceedings and that the judge accepted the petitioner's plea only after

questioning him extensively and determining that his medications did not create any problem understanding the proceedings and their consequences. The record supports these findings.

Moreover, the appellate court found that the trial court's refusal to conduct a hearing was not error. This finding comports with federal law. The Supreme Court has held:

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

The state courts' resolution of these issues was not contrary to, nor did it involve an unreasonable application of, federal law. The petitioner offers no clear and convincing evidence to rebut the factual determinations of the state court. Therefore, I find that the state courts' resolution resulted in a decision that was based on a reasonable determination of the facts in light of the evidence presented, 28 U.S.C. § 2254(d), and I find no basis to grant the Application as to Claims One and Two.

The petitioner argues that evidence outside the record establishes that (1) four months before the plea hearing, the petitioner was taking four separate medications each day; and (2) one of the medications he was taking "may" activate psychotic symptoms in patients who suffer from psychotic disorders. *Amended Application*, pp. 16-17. The petitioner did not attempt to

introduce this evidence in the state courts; it is not a part of the record; and I cannot consider it here.  28 U.S.C. § 2254(e)(2). [7]

I also note that the petitioner asserts that "the trial court took no further steps to ensure that Mr. Berg was capable of entering a valid guilty plea.  To the contrary, the court denied Mr. Berg's request for a competency evaluation."  Id. at pp. 14-15 (citing to Doc. #21, Ex. 5(c)).  This assertion is false.  As discussed above, on June 6, 1996, the petitioner moved in a different criminal action--Case No. 96-CR-495--for a psychiatric evaluation at the State's expense.  Doc. #21, Ex. 5(c).  He sought a psychiatric evaluation because it was a requirement for placement in a drug treatment program at the Colorado State Hospital.  Id.  The motion is based on the petitioner's "drug and alcohol abuse problem."  Id.  The motion does not address the petitioner's mental illness, and it does not seek a *competency* evaluation.  Id.

## IV.  CONCLUSION

I respectfully RECOMMEND that the Amended Application be DENIED.

FURTHER, IT IS ORDERED that the petitioner's request for an evidentiary hearing is DENIED.

IT IS FURTHER ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.

---

[7]I note that the proffered evidence does not establish which medications the petitioner was taking at the time he entered his plea, nor does it establish the effects of such medication on the petitioner during the plea hearing.

In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.   United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated March 31, 2009.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge